**Ephraim BRYKS, Plaintiff,**

v.

**CANADIAN BROADCASTING CORPORATION, Noah Erenberg, Danielle Keefler, Heidi Graham, and Cable News Network, Inc., Defendants.**

**No. 95 Civ. 1219 (MBM).**

United States District Court,
S.D. New York.

Dec. 1, 1995.

Gary S. Jacobson, Jacobson & Triggs, New York City, for Plaintiff.

Lawrence Byrne, Robert D. Sack, Jonathan Israel, Gibson, Dunn & Crutcher, New York City, for Defendants.

## OPINION AND ORDER

MUKASEY, District Judge.

Plaintiff Ephraim Bryks has sued two television networks and three people for defamation. Defendants move to dismiss on the grounds of lack of subject matter jurisdiction and forum non conveniens. For the reasons set forth below, the motion is granted in part and denied in part, and the complaint against defendants Canadian Broadcasting Corporation and its three employees is dismissed for lack of subject matter jurisdiction.

### I.

Plaintiff is an Orthodox Jewish rabbi. (Compl. ¶ 3) Between 1978 and 1990, plaintiff was principal and teacher at the Herzlia–Adas–Yeshurun Torah Academy (the "Academy") in Winnipeg, Manitoba, Canada. (*Id.* ¶ 9) On February 28, 1994, defendant Canadian Broadcasting Corporation ("CBC") twice broadcast a 30–minute report (the "Report") on Plaintiff's tenure at the Academy. (*Id.*) The Report, entitled "Unorthodox Conduct," examined allegations of sexual misconduct by plaintiff and featured interviews with relatives of some of plaintiff's former students. (*Id.* ¶¶ 12–18) Defendant Cable News Network, Inc. ("CNN") obtained a copy of the Report pursuant to a news sharing agreement with the CBC and broadcast a two-minute excerpt on CNN's Headline News Network on March 2, 1994. (Kohler Decl. ¶¶ 2–4) The CBC broadcast a follow-up story on the allegations twice on March 1, 1994, and rebroadcast the original Report on August 25, 1994. (Henry Decl. ¶¶ 10–12)

The three individual defendants are Canadian citizens and were CBC employees at the time the Report aired. (Compl. ¶¶ 5–7) Defendants Danielle Keefler and Heidi Graham narrated the Report; Noah Erenberg produced it. (*Id.* ¶ 9)

Plaintiff filed this action on February 21, 1995. The CBC and the three individual defendants have moved to dismiss for lack of subject matter jurisdiction under the Foreign

Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602–1611 (1988 and Supp. V 1993). In the alternative, the CBC and the individual defendants argue for dismissal under the doctrine of forum non conveniens. CNN seeks dismissal for lack of complete diversity under 28 U.S.C. § 1332 (1988).

## II.

A. *Claims Against the Canadian Broadcasting Corporation*

█ The FSIA "provides the exclusive source of federal jurisdiction in actions against foreign sovereigns or their instrumentalities." *Bailey v. Grand Trunk Lines New England*, 805 F.2d 1097, 1100 (2d Cir. 1986), *cert. denied*, 484 U.S. 826, 108 S.Ct. 94, 98 L.Ed.2d 54 (1987); 28 U.S.C. §§ 1330(a), 1604 (1988). Subject matter jurisdiction in an action against a foreign sovereign may not be premised on diversity of citizenship. *See Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 437 n. 5, 109 S.Ct. 683, 690 n. 5, 102 L.Ed.2d 818 (1989).

Section 1604 of the FSIA sets forth the general rule that "a foreign state shall be immune from the jurisdiction of the courts of the United States * * *." As a threshold matter, it is necessary to determine whether the CBC is a "foreign state" within the meaning of this provision.

Under Section 1603(a) of the FSIA, the term "foreign state" includes "an agency or instrumentality of a foreign state." The phrase "agency or instrumentality of a foreign state" means any entity

(1) which is a separate legal person, corporate or otherwise, and

(2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

(3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (d) of this title, nor created under the laws of any third country.

28 U.S.C. § 1603(b).

█ The CBC satisfies all three criteria. First, the CBC maintains an independent existence under Canadian law as a "crown corporation." *See* Broadcasting Act of Canada, S.C.1991, c. 11; Thomas Decl. Ex. B at 1. Second, as plaintiff concedes, the CBC is wholly owned by the Canadian government. *See* Thomas Decl. Ex. B. at 1; Pl.Mem. at 7. *See also Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1542–1543 (11th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 2334, 124 L.Ed.2d 246 (1993) (commercial car manufacturer wholly owned by French government is a "foreign state" under the FSIA). Third, the CBC is not a citizen of any state of the United States under the diversity statute (because it is a Canadian corporation operating principally in Canada), and the CBC is not incorporated under the laws of any other country.

Plaintiff does not challenge this analysis. Instead, plaintiff urges the court to "rethink[ ] * * * the premises of sovereign immunity" and reject the "mechanistic" analysis invited by Section 1603(b). (Pl.Mem. at 7–9) In support of this argument, plaintiff cites a law review article advocating an "overhaul" of the FSIA. *See* Joan E. Donoghue, *Taking the "Sovereign" Out of the Foreign Sovereign Immunities Act: A Functional Approach to the Commercial Activity Exception*, 17 Yale J. Int'l L. 489, 522 (1992). Plaintiff also offers the "Expert Report" of a Canadian political scientist who argues that because the CBC enjoys freedom from government interference with its programming decisions, it should not be entitled to immunity as a foreign sovereign under American law. *See* Thomas Decl. Ex. B at 11.

Plaintiff's policy arguments are better directed to Congress. We do not deal here with ambiguous statutory language that invites an examination of the general purposes of the statute to help decide which of two equally plausible interpretations is more consistent with the goals of the statute's framers. Rather, this is a case where, as plaintiff tacitly admits, there is little doubt as to what outcome the statute compels. I decline plaintiff's invitation to repeal or rewrite the FSIA.

As a "foreign state" under Section 1604 of the FSIA, the CBC is immune from liability for damages unless one of several enumerat-

ed exceptions to the general rule of immunity applies. *Shapiro v. Republic of Bolivia*, 930 F.2d 1013, 1017 (2d Cir.1991). Because defamation is a tort, the most logical starting point for this analysis is the FSIA's "tortious act" exception. Under this provision, sovereign immunity does not apply in cases

> in which money damages are sought against a foreign state for personal injury * * * occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment * * *.

28 U.S.C. § 1605(a)(5). This language provides the most comfortable fit for plaintiff's allegations: plaintiff has charged that he suffered injury to his reputation in the United States as a result of tortious defamation attributable to the CBC.

However, there is an exception to the "tortious act" exception: it does not apply to

> any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights.

28 U.S.C. § 1605(a)(5)(B). Plaintiff's defamation claim fits squarely within the "exception to the exception."

Plaintiff does not dispute this, but rather attempts an end run around the "tortious act" exception. Plaintiff contends that his defamation claim is cognizable under the FSIA's "commercial activity" exception. Under that provision, sovereign immunity does not bar an action which is

> based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2). The third clause is most plausibly applicable here. It is clear that the CBC's broadcast of the Report in Canada was "an act outside the territory of the United States" which allegedly had a "direct effect in the United States" in the form of injury to plaintiff's reputation. Two other issues are less clear. First, do CBC broadcasts constitute "commercial activity" within the meaning of Section 1605(a)(2)? Second, does the "exception to the exception" contained in Section 1605(a)(5)(B) bar defamation claims asserted even under Section 1605(a)(2)?

1. *Do CBC broadcasts constitute "commercial activity" within the meaning of Section 1605(a)(2)?*

Under Section 1603(d) of the FSIA, "the commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." Unfortunately, the FSIA offers no definition of the critical word "commercial."

The CBC, like most "crown corporations" in Canada, relies on state subsidies for its funding and generally does not earn profits. *See* Thomas Decl. Ex. B at 2. But the Supreme Court recently has explained that

> the question is not whether the foreign government is acting with a profit motive or instead with the aim of fulfilling uniquely sovereign objectives. Rather, the issue is whether the particular actions that the foreign state performs (whatever the motive behind them) are the *type* of actions by which a private party engages in "trade or traffic or commerce."

*Republic of Argentina v. Weltover*, 504 U.S. 607, 614, 112 S.Ct. 2160, 2166, 119 L.Ed.2d 394 (1992) (emphasis in original) (citation omitted). *See also De Letelier v. Republic of Chile*, 748 F.2d 790, 797 (2d Cir.1984) (an activity is "commercial" under the FSIA if it "is of a type an individual would customarily carry on for profit"), *cert. denied*, 471 U.S. 1125, 105 S.Ct. 2656, 86 L.Ed.2d 273 (1985).

This case arises out of the broadcast of an investigative news report. Broadcasting of this sort is an activity "customarily carried on for profit" by private individuals and corporations throughout the United States and Canada. In fact, the broadcasting industry is dominated by private, profit-seeking enterprises; state-sponsored broadcasting is rela-

tively rare and, at least in the United States, hovers on the verge of extinction. *See, e.g.,* Bill Carter, *WNET Braces for Cuts or Worse,* N.Y. Times, January 25, 1995 at C13.

Two courts previously have ruled that certain activities of state-owned press agencies were not "commercial activities" under the FSIA. *See Gregorian v. Izvestia,* 871 F.2d 1515, 1522 (9th Cir.), *cert. denied,* 493 U.S. 891, 110 S.Ct. 237, 107 L.Ed.2d 188 (1989); *Yessenin–Volpin v. Novosti Press Agency,* 443 F.Supp. 849, 856 (S.D.N.Y.1978). But both of these cases involved press agencies dominated by policy-making officials of the former Soviet Union. These decisions rested on the finding that the relevant publications constituted "official commentary of the Soviet government," *Yessenin–Volpin,* 443 F.Supp. at 856, rather than on a judgment about the inherent nature of journalism. The CBC, in contrast, is insulated from the political influence of Canada's policy-makers and accepts ordinary commercial advertising. *See* Thomas Decl. Ex. B at 11.

2. *Does the "exception to the exception" contained in Section 1605(a)(5) bar defamation claims asserted under Section 1605(a)(2)?*

If the CBC's broadcasts are a "commercial activity," the assertion of a defamation claim under the "commercial activity" exception does no violence to the literal language of that provision. Section 1605(a)(2) simply states that immunity is abrogated for claims based on certain acts "in connection with a commercial activity." There is in Section 1605(a)(2) no special rule for defamation claims.

The literal language of Section 1605(a)(5), which abrogates immunity for claims based on certain torts, does not seem to compel a different result. That provision explicitly states that it embraces only cases that are "not otherwise encompassed in [the 'commercial activity' exception]." This suggests that the "commercial activity" exception and the "tortious act" exception were designed to be mutually exclusive. Under this reading of the text, the "tortious act" exception applies only to noncommercial conduct. Accordingly, the "exception to the exception" for libel

and slander would operate to bar only noncommercial defamation, and would have no effect on claims arising under Section 1605(a)(2) because the statute is worded as follows: "*this paragraph* shall not apply to * * * any claim arising out of * * * libel, slander, misrepresentation, deceit, or interference with contract rights." (emphasis added) "[T]his paragraph" is the "tortious act" exception; from the focused "this paragraph" language, one might infer that the "exception to the exception" does not affect paragraph (a)(2) of Section 1605 (the "commercial activity" exception), or any other paragraph in the statute.

Several courts have followed that reasoning and have held that the "exception to the exception" does not affect Section 1605(a)(2). *See Export Group v. Reef Industries, Inc.,* 54 F.3d 1466, 1473–1477 (9th Cir.1995), and cases cited therein; *Carnival Cruise Lines, Inc. v. Oy Wartsila Ab,* 159 B.R. 984, 1002 (S.D.Fla.1993); *Foremost–McKesson Inc. v. Islamic Republic of Iran,* 759 F.Supp. 855, 859 (D.D.C.1991); *LeDonne v. Gulf Air, Inc.,* 700 F.Supp. 1400, 1410–1411 (E.D.Va.1988); *Tifa Ltd. v. Republic of Ghana,* 692 F.Supp. 393, 404 (D.N.J.1988); *United Euram Corp. v. Union of Soviet Socialist Republics,* 461 F.Supp. 609, 612 (S.D.N.Y.1978) ("[T]he restrictions embodied in subsection (a)(5)(B) were not intended to restrict the scope of the commercial activity exception in subsection (a)(2)"); *Yessenin–Volpin,* 443 F.Supp. at 855.

Two panels of the Ninth Circuit have reached opposite conclusions on this issue; one panel dismissed the other panel's analysis as dictum. *Compare Export Group,* 54 F.3d at 1471 *with Gregorian,* 871 F.2d at 1522 n. 4.

Many other courts have adjudicated "commercial activity" exception claims alleging torts listed in the "exception to the exception" without considering whether the "exception to the exception" applies. *See* cases cited in *Export Group,* 54 F.3d at 1475; *United World Trade, Inc. v. Mangyshlakneft Oil Production Ass'n,* 33 F.3d 1232, 1236 (10th Cir.1994) (fraud and misrepresentation), *cert. denied,* —— U.S. ——, 115 S.Ct. 904, 130 L.Ed.2d 787 (1995); *General Elec.*

*Capital Corp. v. Grossman*, 991 F.2d 1376 (8th Cir.1993) (fraud and misrepresentation); *Richmark Corp. v. Timber Falling Consultants, Inc.*, 937 F.2d 1444, 1446 (9th Cir.1991) (fraud), *cert. denied*, —— U.S. ——, 113 S.Ct. 295, 121 L.Ed.2d 219 (1992); *Gould, Inc. v. Pechiney Ugine Kuhlmann*, 853 F.2d 445, 447 (6th Cir.1988) (interference with contractual relationship); *Maizus v. Weldor Trust Reg.*, 820 F.Supp. 101, 103 (S.D.N.Y.1993) (fraud and negligent misrepresentation); *AMPAC Group Inc. v. Republic of Honduras*, 797 F.Supp. 973, 980 (S.D.Fla.1992) (fraud and misrepresentation), *aff'd*, 40 F.3d 389 (11th Cir.1994); *L'Europeene de Banque v. La Republica de Venezuela*, 700 F.Supp. 114, 116 (S.D.N.Y.1988) (fraud); *Gibbons v. Udaras na Gaeltachta*, 549 F.Supp. 1094, 1115 n. 11 (S.D.N.Y.1982) (misrepresentation and interference with contract rights).

■ I find it anomalous to read the FSIA to permit defamation claims under the commercial activity exception. First, it seems odd that Congress would go to the trouble of specifically excluding defamation claims from the FSIA's abrogation of immunity in one part of the statute, yet would implicitly permit such claims elsewhere in the statute. It seems more plausible that the specific exclusion of defamation claims was intended as a general limitation on the liability of a foreign sovereign under the FSIA.

Second, the nature of the torts listed in the "exception to the exception" makes it hard to infer that Congress intended that provision to apply only to noncommercial activity, as it would if plaintiff's reading of the statute were correct. For example, one of the listed torts is "interference with contract rights." It is difficult to conceive of a claim for "interference with contract rights" that does not involve commercial activity. Accordingly, it would be pointless to provide that such claims are barred only in noncommercial settings. Such a reading of the statute would render this part of the "tortious act" exception virtually useless. *See Gregorian*, 871 F.2d at 1522 n. 4. Similarly, it is difficult to imagine a claim for misrepresentation or deceit giving rise to actual damages outside a commercial setting.

Third, to allow the assertion of defamation claims under Section 1605(a)(2) would create an incongruity between foreign sovereign immunity and the sovereign immunity of the United States. Congress modeled the FSIA's "exception to the exception" after the Federal Tort Claims Act, 28 U.S.C. § 2680(h), which preserves absolute immunity for the United States from libel and slander claims. *See* H.R.Rep. No. 1487, 94th Cong.2d Sess (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6620 ("The exceptions provided in subparagraphs (A) and (B) of 1605(a)(5) correspond to many of the claims with respect to which the U.S. Government retains immunity under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. 2680(a) and (h)"); *Gregorian*, 658 F.Supp. at 1233. It seems "unlikely that Congress wished to create a double standard under which foreign sovereigns could be sued in United States courts on tort claims, such as libel, for which the United States Government itself is immune." *Id.* at 1233–1234.

In finding that the "exception to the exception" does not apply to claims asserted under the "commercial activity" exception, the Court in *Export Group* purported to follow the "plain meaning" and "unambiguous terms" of the statute. *Export Group*, 54 F.3d at 1466. Given the anomalies discussed above, I find the interplay between Sections 1602 and 1605 anything but plain. Oddly, the Court in *Export Group* also acknowledged the "confusing nature of the language and structure of 28 U.S.C. § 1605" before proceeding to divine the "plain meaning" of the statute. *Id.*

As the Supreme Court has explained, "[l]ooking beyond the naked text for guidance is perfectly proper when the result it apparently decrees is difficult to fathom or where it seems inconsistent with Congress' intention * * *." *Public Citizen v. U.S. Department of Justice*, 491 U.S. 440, 455, 109 S.Ct. 2558, 2567, 105 L.Ed.2d 377 (1989). Ultimately, a court's task in interpreting a federal statute is to give effect to the intent of Congress. *See, e.g., United States ex rel. Dick v. Long Island Lighting Co.*, 912 F.2d 13, 17 (2d Cir.1990); *Cabell v. Markham*, 148 F.2d 737, 739 (2d Cir.) ("statutes always have

some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning") (L. Hand, J.), *aff'd*, 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165 (1945). For the reasons discussed above, I find it difficult to believe that Congress intended the "exception to the exception" to apply only in noncommercial settings. Accordingly, I respectfully disagree with the view expressed in the *Export Group* decision and the cases of similar import cited above, and hold that plaintiff may not sue a foreign state for defamation under the "commercial activity" exception. Because the CBC is immune from suit under the FSIA, there is no need to consider the CBC's alternative argument for dismissal under the doctrine of forum non conveniens.

### B. *Claims Against the Individual Defendants*

The individual Canadian defendants argue that they too are immune from suit as "agencies or instrumentalities" of a foreign state under the FSIA. Section 1603 of the FSIA, as quoted above, defines "agency or instrumentality" as an "entity" which meets the three enumerated criteria. One Court has held that the use of the term "entity" indicates that Congress did not intend to confer FSIA immunity on any natural persons. *Republic of the Philippines v. Marcos*, 665 F.Supp. 793, 797 (N.D.Cal.1987). However, "[i]t is generally recognized that a suit against an individual acting in his official capacity is the practical equivalent of a suit against the sovereign directly." *Chuidian v. Philippine Nat'l Bank*, 912 F.2d 1095, 1101 (9th Cir.1990). Accordingly, the majority of courts that have reached the issue have found that immunity under the FSIA extends also to agents of a foreign state acting in their official capacities. *Id.* at 1103; *Kline v. Kaneko*, 685 F.Supp. 386, 389 n. 1 (S.D.N.Y. 1988); *American Bonded Warehouse Corp. v. Compagnie Nationale Air France*, 653 F.Supp. 861, 863 (N.D.Ill.1987); *Rios v. Marshall*, 530 F.Supp. 351, 371 (S.D.N.Y.1981).

■ Plaintiff does not specify in his complaint whether he sues Erenberg, Keefler, and Graham in their individual or official capacities. But it is apparent from plaintiff's complaint that the defendants' alleged liability arises solely out of their participation in the production of the Report. Because preparing news features such as "Unorthodox Conduct" was "within the scope of [their] official duties" as journalists in the employ of the state-owned broadcasting company, this must be treated as an official capacity suit. *See Kline*, 685 F.Supp. at 389. Accordingly, the individual defendants, like the CBC, are immune from suit.

### C. *Claims Against Cable News Network*

■ CNN is not a foreign sovereign, so the FSIA does not bar plaintiff's claim against CNN. Subject matter jurisdiction for this claim exists under the diversity statute because (1) plaintiff is an American citizen and a resident of New York (Compl. ¶ 3); (2) CNN is a Georgia corporation maintaining its principal place of business in Atlanta, Georgia (Compl. ¶ 8; Kohler Decl. ¶ 2); and (3) plaintiff claims damages well in excess of $50,000, exclusive of interest and costs (Compl. ¶¶ 33, 39–40). 28 U.S.C. § 1332.

Defendants' Memorandum of Law includes an argument in the alternative for dismissal on forum non conveniens grounds, but this argument is asserted only on behalf of the Canadian defendants. (*See* Def.Mem. at 19) CNN makes no other arguments now, but says that it plans to move for dismissal "in due course" on substantive grounds. (*Id.* at 23) Accordingly, the claim against CNN will stand.

\*     \*     \*

Because the CBC and its employees are "a foreign state" within the meaning of the FSIA, and because no exception to the FSIA's general grant of immunity applies here, there is no subject matter jurisdiction for a defamation action against them. Accordingly, the motion to dismiss is granted with respect to the claims against the CBC and the three individual defendants. The motion is denied with respect to the claim against CNN.

SO ORDERED.