**LOS ANGELES NEWS SERVICE and Robert Albert Tur, Plaintiffs,**

v.

**CONUS COMMUNICATIONS COMPANY LIMITED PARTNERSHIP; Westinghouse Electric Corporation; Worldwide Television News Corporation; Courtroom Television Network; and Canadian Broadcasting Corporation, Defendants.**

**No. CV–95–2852 KMW (SHx).**

United States District Court, C.D. California.

July 9, 1997.

William A. Bergen, Law Offices of William A. Bergen, Auburn, CA, for Los Angeles News Service.

Vincent Cox, Robert S. Gutierrez, Leopold, Petrich & Smith, Los Angeles, CA, for Conus Communications Company Limited Partnership.

Louis P. Petrich, Leopold, Petrich & Smith, Los Angeles, CA, for Canadian Broadcasting Corporation.

Steven M. Perry, Paul J. Watford, Munger, Tolles & Olson, L.L.P., Los Angeles, CA, for Worldwide Television News Corporation.

## MEMORANDUM OF DECISION AND ORDER RE: DEFENDANT CANADIAN BROADCASTING CORPORATION'S MOTION TO DISMISS

WARDLAW, District Judge.

This motion presents the question whether the Canadian Broadcasting Corporation ("CBC") can be held liable under the copyright laws of the United States for broadcasts of allegedly infringing programs originating in Canada which are received and viewed in the United States. By its Motion to Dismiss for Lack of Subject Matter Jurisdiction or, in the Alternative, to Sever the Action and Strike Plaintiffs' Jury Demand, CBC challenges this Court's jurisdiction, arguing (1) it did not violate United States copyright laws because it broadcasts solely to Canadian residents from Canada; and (2) it is entitled to immunity under the Foreign Sovereign Immunities Act. Having reviewed all the materials filed by the parties in connection with this motion and considered the oral argument of counsel, as well as all files and records in this case, the Court **DENIES** Defendant's Motion to Dismiss and **GRANTS** Defendant's Motion to Sever.[1]

## I. BACKGROUND

Plaintiff Los Angeles News Service ("LANS") is an accredited news gathering and reporting organization owned and operated by Robert Albert Tur ("Tur"), which produces video and audio tape recordings of newsworthy events and licenses them for profit. First Amended Complaint ("FAC") ¶ 9. On April 29, 1992, civil unrest broke out

---

1. This matter came on for hearing before the Court on April 14, 1997, and was taken under submission. On April 29, 1997, the Court issued a Civil Minutes Order finding that the jurisdictional and substantive issues are so intertwined in this case as to require the application of the Rule 56 summary judgment standard to the resolution of the motion. The Court ordered the parties to present any additional evidentiary material which they deemed necessary for the determination of this motion. The Court has now considered the Memorandum Regarding Additional Evidentiary Material and supporting documents filed by LANS on May 15, 1997, and the Reply to Plaintiffs' Memorandum Regarding Additional Evidentiary Material and supporting documents, filed by CBC on May 21, 1997.

**582**

in the City of Los Angeles following the acquittal of the four Los Angeles police officers charged with using excessive force in the arrest of Rodney King. On that day, LANS was operating video cameras from a helicopter and took videotape motion pictures, including videotape of several persons being beaten. It licensed these videotapes to various news organizations and television stations. FAC ¶ 9. Plaintiffs own the copyrights to the videotape pictures that they call "Beating of Reginald Denny," "Beating of Man in White Panel Truck," "Beating of Man in Brown Hatchback with Rescue," and "[J]apanese Man in Brown Bronco Attacked by Rioters." FAC ¶ 11.

CBC produces and distributes for television broadcast news, entertainment and commentary throughout Canada and portions of the United States. FAC ¶ 8. CBC was created by the Parliament of Canada as a body corporate. Supplemental Declaration of Peter E. Robinson ("Robinson Supp.Decl.") ¶ 2. CBC has corporate offices in Los Angles County, California, with its principal business office located in Canada. CBC does not intentionally broadcast its signal into the United States. Given the common border shared by Canada and the United States, however, CBC's transmissions invariably "spill" CBC's signal into areas of the United States located in close proximity to the border. Declaration of Peter E. Robinson ("Robinson Decl.") ¶¶ 6–7. In 1992–1993, for example, an average of 7,814 households in the United States received CBC's broadcast signal and actually watched CBC. Declaration of Nancy Gallagher ("Gallagher Decl.") ¶ 3.

CBC concedes that, beginning on April 30, 1 1992, CBC broadcast news reports relating to the civil unrest in Los Angeles, including footage of the beating of Reginald Denny and, on one occasion, footage of the beating of a man in a white panel truck. Declaration of Anthony Burman ("Burman Decl.") ¶ 2. However, CBC contends that other news organizations were present and obtained aerial footage of the events occurring on April 29, 1992, and does not concede that Plaintiffs were the copyright owners of the footage used by CBC. Robinson Decl. ¶ 9.

## II. STANDARD GOVERNING MOTION

■ A motion to dismiss for lack of subject matter jurisdiction may be brought pursuant to Federal Rule of Civil Procedure 12(b)(1). The party seeking to invoke the jurisdiction of the court has the burden of establishing that such jurisdiction exists, *Scott v. Breeland,* 792 F.2d 925, 927 (9th Cir.1986). When a jurisdictional question is raised, the court is not confined to examining the allegations of the complaint, but may consider "affidavits or any other evidence properly before the court." *Dreier v. United States,* 106 F.3d 844, 847 (9th Cir.1997) (citations and quotations omitted). "[T]he existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Augustine v. United States,* 704 F.2d 1074, 1077 (9th Cir.1983) (quoting *Thornhill Publishing Co. v. General Telephone Corp.,* 594 F.2d 730, 733 (9th Cir.1979)).

■ The standard applicable to a 12(b)(6) motion does not apply to the resolution of jurisdictional questions when "issues of jurisdiction and substance are intertwined." *Roberts v. Corrothers,* 812 F.2d 1173, 1177 (9th Cir.1987). Normally, the question of jurisdiction and the merits of an action are considered intertwined where the "same statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief." *Sun Valley Gasoline, Inc. v. Ernst Enterprises, Inc.,* 711 F.2d 138, 139 (9th Cir.1983). In such cases, the Rule 56 summary judgment standard applies, and the moving party must establish that there are no material facts in dispute and that he or she is entitled to prevail as a matter of law. *Augustine,* 704 F.2d at 1077.

## III. DISCUSSION

**A. Plaintiff Has Adequately Alleged Infringement of United States Copyright Laws.**

■ The issue of copyright law presented here is the converse of that before the Ninth Circuit in *Allarcom Pay Television Ltd. v. General Instr. Corp.,* 69 F.3d 381, 387 (9th Cir.1995). In *Allarcom,* a Canadian broad-

caster sued to block the unauthorized unscrambling of satellite transmissions originating in the United States, but received and viewed in Canada. The court relied on the Ninth Circuit's en banc ruling in *Subafilms, Ltd. v. MGM–Pathe Communications Co.*, 24 F.3d 1088 (9th Cir.1994), *cert. denied*, 513 U.S. 1001, 115 S.Ct. 512, 130 L.Ed.2d 419 (1994). *Subafilms* held in part "that in order for U.S. copyright law to apply, at least one alleged infringement must be completed entirely within the United States." *Allarcom*, 69 F.3d at 387. The Ninth Circuit found in *Allarcom* that "the potential infringement was only completed in Canada once the signal was received and viewed." *Id.* Thus, the copyright laws of the United States did not apply. This Court followed *Allarcom*'s reasoning in *Los Angeles News Service v. Reuters Television International, Ltd.*, 942 F.Supp. 1265 (C.D.Cal.1996), which LANS correctly asserts supports its theory that the location where the broadcast is received and viewed is determinative of whether United States copyright laws apply. In *Reuters*, this Court held that defendant was not liable for satellite transmissions from the United States to London because the infringement was not *completed* until the transmission was received and viewed at the London branch office. *Reuters*, 942 F.Supp. at 1269.

Here, CBC contends that because it broadcasts its programming from Canada to residents of Canada, this Court lacks jurisdiction. It argues that CBC has not infringed plaintiffs' works in the United States and, hence, United States copyright laws do not apply. CBC's contention that the claims against it are barred by the holding in *Subafilms* is wrong. While it is true that "wholly extraterritorial acts of infringement are not cognizable under the Copyright Act," *Subafilms*, 24 F.3d at 1090, CBC's alleged acts of infringement are not wholly extraterritorial. In *Subafilms*, the Court considered domestic authorization of acts of infringement which were completed outside the United States. *Id.* at 1088. Here, however, Plaintiffs' claim direct acts of infringement—not merely authorization—by the display of Plaintiffs' copyrighted works on American television sets.

The copyright laws prohibit the unauthorized performance or display of copyrighted audiovisual works. 17 U.S.C. § 106.[2] The Copyright Act of 1976 made clear that the "display" of a copyrighted work includes the showing of its image by television broadcast. 17 U.S.C. § 101.[3] Under the plain language of the Act, the subject footage was "displayed" on television sets within the United States within the meaning of the Copyright Act. To find otherwise would leave a substantial loophole in the copyright laws. Broadcasters could deliberately transmit potentially infringing material from locations across the U.S. borders for display in the United States without regard to the rights of copy-

[2]. The Copyright Act of 1976 grants the owner of the copyright the exclusive right to reproduce a copyrighted work, prepare derivative works, distribute copies of the work, and perform and display the work. 17 U.S.C. § 106. Infringement of a copyright occurs when a defendant violates one of the exclusive rights of the copyright holder. 17 U.S.C. § 501(a). Section 106 provides:

Subject to sections 107 through 120, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:
(1) to reproduce the copyrighted work in copies or phonorecords;
(2) to prepare derivative, works based upon the copyrighted work;
(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;
(4) in the case of ... motion picture or other audiovisual works, to perform the copyrighted work publicly;
(5) in the case of ... motion picture[s] or other audiovisual works, to display the copyrighted work publicly; [or]
(6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.
17 U.S.C. § 106.

[3]. In a trio of cases from 1968 to 1975, the Supreme Court held that the "the reception of a radio or television broadcast was not a 'performance' under the 1909 Act. The Court's 'narrow construction' of the word 'perform' was completely overturned by the [1976 Act] and its broad definition of 'perform' in section 101." *Sony Corporation of America, et al. v. Universal City Studios, Inc.*, 464 U.S. 417. 469 n. 17, 104 S.Ct. 774, 802 n. 17, 78 L.Ed.2d 574 (1984) (dissenting opinion).

right owners set forth in the U.S. Copyright Act.

■ CBC further asserts two arguments that bear more aptly on the question of damages, not liability. First, CBC contends that any allegedly infringing activity in the United States was unintended and unavoidable.[4] Even if true, however, this is no defense to an infringement of copyright. Direct infringement does not require intent or any particular state of mind. *See* 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.08 (1996) ("[i]n actions for statutory copyright infringement, the innocent intent of the defendant will not constitute a defense to a finding of liability").

Second, CBC argues that the spillover was *de minimis* and, therefore, cannot constitute an act of infringement in the United States. CBC acknowledges, however, that an average of 7,814 households receive its signal. This number is not *de minimis*, particularly in the context of a jurisdictional question. *See National Enquirer, Inc. v. News Group News, Ltd.,* 670 F.Supp. 962, 970 (S.D.Fla. 1987) (distribution within the United States of 85 copies of newspaper published abroad sufficient to confer subject matter jurisdiction) 2 *Nimmer on Copyright, supra,* § 8.14[c] ("the fact that only an insubstantial number of persons actually attend a performance will not derogate from its character as a public performance, if under the restrictions imposed, a substantial number of persons outside of a normal family circle, and its social acquaintances could have attended").

If it is determined that the footage broadcast by CBC infringes LANS' copyright, an act of infringement was committed within the United States when the Canadian transmission was received and viewed here. Based on the foregoing, the Court finds that Plaintiffs have alleged acts of infringement occurring within the territorial boundaries of the United States.

## B. CBC is not Immune from Suit Under the Foreign Sovereign Immunities Act.

CBC also contends that as a "foreign state" it is immune from suit under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 et seq. ("FSIA"). This contention requires the resolution of two issues. First, the Court must determine whether the CBC is an "agent or instrumentality" of the Canadian Government so as to fall within the FSIA If the Court so determines, then the Court must consider whether the activities of the CBC were commercial in nature which, would subject it to the exception to the general rule of immunity.

■ "[T]he FSIA sets forth the general rule the foreign states are immune from the jurisdiction of both federal and state courts in the United States subject to certain exceptions." *Siderman de Blake v. Republic of Argentina,* 965 F.2d 699, 703 (9th Cir. 1992), *cert. denied,* 507 U.S. 1017, 113 S.Ct. 1812, 123 L.Ed.2d 444 (1993); *The Export Group v. Reef Industries, Inc.,* 54 F.3d 1466, 1469 (9th Cir.1995). It provides:

[s]ubject to existing international agreements to which the United States is a party at the time of the enactment of this Act a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter.

28 U.S.C. § 1604. The immunity applies not only to foreign states, but includes an "agency or instrumentality of a foreign state," 28 U.S.C. § 1603(a). An agency or instrumentality means any entity:

(1) which is a separate legal person, corporate or otherwise, and (2) which is an organ of a foreign state of political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (d) of this title, nor

---

4. Pursuant to Section 504 of the Copyright Act, the Court may increase the award of statutory damages where the Court finds that the infringement was willful or, conversely award nominal statutory damages where the Court finds that the infringer was not aware that his or her acts constituted infringement of the copyright laws. 17 U.S.C. § 504(c)(2).

created under the laws of any third country.

28 U.S.C. § 1603(b)(1)–(3). "[T]he FSIA provides the sole basis for obtaining jurisdiction over a foreign state in federal court." *Argentine Republic v. Amerada Hess Shipping Corp.,* 488 U.S. 428, 439, 109 S.Ct. 683, 690, 102 L.Ed.2d 818 (1989). "Federal jurisdiction does not attach until it is determined that the foreign sovereign lacks immunity under the provisions of the FSIA." *Randolph v. Budget Rent–A–Car,* 97 F.3d 319, 323 (9th Cir.1996).

Section 1605 of the FSIA provides for an exception to immunity when:

[1] the action is based upon a commercial activity carried on in the United States by the foreign state; or [2] upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere, or [3] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2).

**1. CBC is a Foreign State for Purposes of the Act.**

▪ CBC qualifies as a foreign state for purposes of the FSIA. CBC was created by the Canadian Parliament and is incorporated under the Canadian Broadcasting Act, S.C. 1936, c. 24, and as such constitutes a separate legal entity. Furthermore, CBC is a Crown corporation. All of CBC's assets are Crown assets wholly owned by the government and citizens of Canada. Finally, CBC is not a citizen of any state as defined in 1332(c). *See also Bryks v. Canadian Broadcasting Corporation,* 906 F.Supp. 204 (S.D.N.Y.1995) (holding that the CBC satisfied the requirements of 28 U.S.C. § 1603(b) and was, therefore, a "foreign state" within the meaning of the Act).

**2. The "Commercial Activity" Exception to Immunity Applies Here so as to Void the General Rule of Immunity.**

▪ Whether an activity is a commercial activity as defined by the FSIA "shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." 28 U.S.C. § 1603(d). In determining whether immunity should be denied "the courts examine whether the particular conduct giving rise to the claim in question actually constitutes or is in connection with commercial activity, regardless of the defendant's generally commercial or governmental character." *Joseph v. Office of the Consulate General of Nigeria,* 830 F.2d 1018, 1023 (9th Cir.1987), *cert denied,* 485 U.S. 905, 108 S.Ct. 1077, 99 L.Ed.2d 236 (1988) (quotations omitted). "The central question is 'whether the activity is of a kind in which a private party might engage.' " *In re Estate Ferdinand Marcos Human Rights Litigation,* 94 F.3d 539 (9th Cir.1996) (quoting *Joseph,* 830 F.2d at 1023). Plaintiffs have the burden of presenting sufficient evidence that CBC's conduct meets one of the exceptions to sovereign immunity in the FSIA. *See Siderman de Blake v. Republic of Argentina,* 965 F.2d 699, 708 n. 9 (9th Cir.1992), *cert. denied,* 507 U.S. 1017, 113 S.Ct. 1812, 123 L.Ed.2d 444 (1993) (once a defendant establishes that it is a sovereign state and the plaintiff's claim arises out of a public act, the plaintiff "has the burden of going forward with the evidence by offering proof that one of the FSIA exemptions applies").

▪ CBC contends that its broadcast is not commercial activity for purposes of the FSIA. CBC argues that, although some of its programs accept advertising, the particular show that broadcast the videotape was *non–commercial* new programming because no advertising was inserted into the body of the news programming. CBC relies on *Intercontinental Dictionary Series v. DeGruyter,* 822 F.Supp. 662 (C.D.Cal.1993), in support of its argument that its news broadcast was not commercial. In *Intercontinental,* the court found that the research and development of a complex, academic linguistic treatise did not constitute commercial activity. The *Intercontinental* court specifically found that "a private party operating in the market would not normally 'trade and traffic' in the research and development of a complex, academic treatise." *Intercontinental,* 822

F.Supp. 662, 676. However, television news programming is not analogous to the publication of a complex academic treatise as many private parties do "trade and traffic" in the television news business.

▆▆ Moreover, that the news programming containing the subject footage did not accept advertising is not determinative. "Though activities that customarily are carried on for profit are certainly commercial (citation), an activity need not be motivated by profit to be commercial." *Siderman*, 965 F.2d at 708 (citations and quotations omitted). The Supreme Court has concluded that

> because the Act provides that the commercial character of an act is to be determined by reference to its 'nature' rather than its 'purpose,' 28 U.S.C. § 1603(d), the question is not whether the foreign government is acting with a profit motive or instead with the aim of fulfilling uniquely sovereign objectives. Rather, the issue is whether the particular actions that the foreign slate performs (whatever the motive behind them) are the type of actions by which a private party engages in 'trade and traffic or commerce.'

*Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614, 112 S.Ct. 2160, 2166, 119 L.Ed.2d 394 (1992).

This very issue was addressed by the Southern District of New York in *Bryks v. Canadian Broadcasting Corporation*, 906 F.Supp. 204 (S.D.N.Y.1995). The *Bryks* case arose out of an investigative news report produced by CBC. The plaintiff was an orthodox Jewish rabbi, principal and teacher at an academy in Winnipeg, Manitoba. CBC broadcast a 30 minute report on the rabbi which examined allegations of his sexual misconduct and featured interviews with relatives of some of his former students. Cable News Network ("CNN"), a co-defendant in the action, obtained a copy and broadcast the report on its Headline News Network. The court found that

> [b]roadcasting of this sort is an activity 'customarily carried on for profit' by private individuals and corporations throughout the United States and Canada. In fact, the broadcasting industry is dominated by private, profit-seeking enterprises;

state-sponsored broadcasting is relatively rare and, at least in the United States, hovers on the verge of extinction.

906 F.Supp. at 207. The court distinguished cases involving state-owned press agencies in which the publications constituted "official commentary" of the government, finding that "[t]he CBC, in contrast, is insulated from the political influence of Canada's policy-makers and accepts ordinary commercial advertising." *Id.* Based on the foregoing, the Court finds that the conduct giving rise to Plaintiffs' claim here—the broadcast of its television news programming—constitutes commercial activity within the meaning of the FSIA.

▆▆ CBC further contends that, even if it were engaged in a commercial activity, Plaintiffs have failed to show that the activity had a "direct effect in the United States" as required by clause three of the commercial activity exception. The Court disagrees. CBC's activity falls within both clauses two and three of the exception, as explained below.

### a. Plaintiffs' claims are based upon an act performed within the United States in connection with a commercial activity elsewhere.

Clause two of the commercial activity exception applies to an action based "upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere." 28 U.S.C. § 1605(a)(2). "As the few cases to address this clause have noted, it requires a material connection ... between the plaintiff's cause of action and the act performed in the United States." *Siderman de Blake*, 965 F.2d at 709 (quotations omitted). In the instant case, there is a direct connection between Plaintiffs' cause of action for copyright infringement and the act performed within the United States. The display of the subject footage was performed on television sets in the United States. As discussed *supra* at p. 583, to the extent that CBC has infringed on Plaintiffs' copyright, the act of infringement occurred within the United States.

### b. The actions of CBC had a direct effect in the United States.

Clause three of the commercial activity exception requires that the acts of the defendant have a "direct effect in the United States." 28 U.S.C. § 1605(a)(2). "An effect is 'direct' for purposes of the commercial activity exception if it follows as an 'immediate consequence' of the defendant's activity." *Adler v. Federal Republic of Nigeria,* 107 F.3d 720, 726 (9th Cir.1997) (citing *Republic of Argentina v. Weltover, Inc.,* 504 U.S. at 618, 112 S.Ct. at 2168). CBC concedes that Section 1605 does not require that the effect be 'substantial' or 'foreseeable.' 504 U.S. at 618, 112 S.Ct. at 2168. However, it asserts that the spillover of its broadcast into the U.S. and the number of television households that even receive CBC's signal show that the effect was trivial. In support of its argument, CBC relies on *Princz v. Federal Republic of Germany,* 26 F.3d 1166, 1172 (D.C.Cir.1994), *cert. denied,* 513 U.S. 1121, 115 S.Ct. 923, 130 L.Ed.2d 803 (1995). The court in *Princz* found that " 'the commercial activity' giving rise to this suit cannot be considered an 'immediate consequence' " of the defendant's acts because there were "too many intervening elements between the asserted cause and effect." 26 F.3d at 1172. *Princz* is inapplicable because here there are no intervening acts between CBC's broadcast of the subject footage and the display of the footage on television sets within the United States. Thus, there is a direct effect between the commercial activity and the alleged injury: violation of Plaintiffs' copyright.[5]

### C. The Claims Against CBC Should be Severed and Tried to the Court Because there is no Right to a Jury Trial for Claims Against a Foreign State.

 CBC alternatively requests that the action against it be severed from the remaining claims and tried to the Court. The FSIA requires that the claim against CBC be tried to the bench, not to a jury. *See e.g. Wilmington Trust v. United States District Court for the District of Hawaii,* 934 F.2d 1026, 1032 (9th Cir.1991), *cert. denied,* 503 U.S. 966, 112 S.Ct. 1578, 118 L.Ed.2d 220 (1992) (no right to a jury trial attaches to claims brought against a foreign state).

### IV. CONCLUSION

Based on the foregoing, the Court finds that the Plaintiffs have alleged an act of copyright infringement occurring within the United States. The Court finds further that CBC was engaged in "commercial activity" within the meaning of the FSIA and that the undisputed facts bring the actions of CBC within clauses two and three of the commercial activity exceptions to immunity from suit. Because this Court has jurisdiction over Plaintiffs' claims against CBC, it **DENIES** CBC's Motion to Dismiss and **GRANTS** CBC's Motion to Sever the Action for trial by the Court.

IT IS SO ORDERED.

---

5. Similarly, the court in *Bryks* determined that the CBC news broadcast was an act that had a " 'direct effect in the United States' in the form of injury to plaintiff's reputation." *Bryks,* 906 F.Supp. at 207.