Yuka KATO, Plaintiff,

v.

**Governor Shintaro ISHIHARA and the Tokyo Metropolitan Government, Defendants.**

**No. 01 CIV. 6953(RMB).**

United States District Court, S.D. New York.

Dec. 27, 2002.

F. Fredric Fouad, New York City, Raquel Crespi, Law Offices of Jeffery Schreiber, for plaintiff.

## ORDER

BERMAN, District Judge.

## I. Introduction

On July 21, 2001, Yuka Kato ("Kato" or "Plaintiff") filed a complaint ("Complaint") against her employer, the Tokyo Metropolitan Government ("TMG"), and Shintaro Ishihara ("Ishihara"), the Governor of Tokyo, Japan (collectively, "Defendants"), seeking damages and declaratory and injunctive relief for alleged sexual harassment and retaliation, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et. seq.*, as amended, New York State Human Rights Law, N.Y. Exec. Law § 291 *et. seq.* ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8–107 ("NYCHRL").[1]

On March 28, 2002, Defendants moved to dismiss Plaintiff's claims ("Defendants' Motion") pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ.P.") 12(b)(1), 12(b)(2), and 12(b)(6), arguing, among other things, that (i) "Kato's Title VII claims arising out of alleged acts that occurred in the United States are time barred," (ii) "the alleged retaliation occurred outside of the United States," (iii) "TMG is immune from liability under the Foreign Sovereign Immunities Act ('FSIA')," (iv) "the Complaint must be dismissed on the ground of forum non conveniens," and (v) "claims against Ishihara must be dismissed for lack of personal jurisdiction." Defendants' Motion at 2–3. On May 17, 2002, Plaintiff opposed the motion ("Plaintiff's Opposition") and, on or about July 5, 2002, Defendants filed a reply ("Defendants' Reply").

**For the reasons set forth below, the Court grants Defendants' Motion to dismiss the Complaint.**

## II. Standard of Review

■ "[A] foreign state is presumptively immune from the jurisdiction of the United States courts; unless a specified exception applies, a federal court lacks subject matter jurisdiction over a claim against a foreign state." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355, 113 S.Ct. 1471, 123 L.Ed.2d 47 (1993). "On a motion under Fed.R.Civ.P. 12(b)(1), challenging the district court's subject matter jurisdiction, the court may resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits." *Antares Aircraft, L.P. v. Federal Republic of Nigeria*, 948 F.2d 90, 96 (2d Cir.1991).

"[A]n employment discrimination complaint ... must contain only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Swier-*

---

1. On January 22, 2002, Plaintiff also filed a complaint against TMG in Japan in the Tokyo District Court "concerning the same general matters that are at issue in [this case]." Declaration of Yuka Kato, dated May 15, 2002, at ¶ 17 ("Kato Decl."). *See* Affidavit of Keizou Nakai, TMG's Director, Personnel Section, Personnel Division, Bureau of General Affairs, dated June 27, 2002, at ¶ 11 ("Nakai Aff."). ("To date, there have been three appearances before the Tokyo District Court, on March 4, 2002, April 22, 2002, and June 14, 2002.").

*kiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) (quoting Fed.R.Civ.P. 8(a)(2)).

■ A court may dismiss an action pursuant to Rule 12(b)(6) only if " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle [her] to relief.' " *Cohen v. Koenig,* 25 F.3d 1168, 1172 (2d Cir.1994) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The court "must accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff." *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996). The issue to be resolved by the court is not whether the plaintiff will ultimately prevail on his or her claim; it may, in fact, appear on the face of the pleadings that a recovery is unlikely. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The test is whether or not the plaintiff is entitled to offer evidence in support of the allegations in his or her complaint. *Id.* The Court is "limited to the factual allegations in plaintiff's … complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff's possession or of which plaintiff[ ] had knowledge and relied on in bringing suit." *McNulty v. New York City Dep't of Fin.,* 941 F.Supp. 452,

453 (S.D.N.Y.1996) (quoting *Brass v. Am. Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir.1993)).

## III. Analysis

The facts set forth in the Complaint are accepted as true.

### A. TMG and Ishihara are Immune from Suit

■ TMG and Ishihara are immune from suit in the United States. *See* 28 U.S.C. § 1604 ("a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States"). Under the FSIA, a foreign state and its agencies and instrumentalities—such as TMG and Ishihara here—are immune from suit in the United States "absent an express waiver of immunity or an applicable statutory exception." [2] *Mukaddam v. Permanent Mission of Saudi Arabia to the United Nations,* 111 F.Supp.2d 457, 463 (S.D.N.Y.2000); *see* 28 U.S.C. § 1603.

Plaintiff argues that the "commercial activity" exception to the FSIA applies here.[3] TMG "should not be permitted to claim the protections afforded by the FSIA" because TMG engaged in "patently commercial activity" in New York, and Plaintiff engaged, in part, in "purely commercial activities." Plaintiff's Opposition at 14. Plaintiff alleges that, among other things, she "promoted Japanese products, attended trade

---

**2.** The parties agree that TMG is an agency or instrumentality of a foreign state, as defined by the FSIA. *See* Defendants' Motion at 8 ("TMG is a branch of the Japanese government"); Plaintiff's Opposition at 13 ("[P]laintiff is not suggesting that foreign cities cannot enjoy the benefits of immunity under the FSIA.").

**3.** Under Section 1605 of the FSIA,
[a] foreign state or its instrumentalities shall not be immune from the jurisdiction of courts of the United States or of the States in any case … (2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States; ….

28 U.S.C. § 1605(a)(2).

shows, ... [and] engaged in sales activities" in New York. *Id.* at 11–12. Defendants respond that "TMG is immune under the FSIA because it is indisputable that Kato [Plaintiff] is a Japanese civil servant," Defendants' Motion at 2, and "[c]lassification of an individual as a civil servant is determinative of the issue regardless of the tasks being performed." *Id.* at 9. Defendants also assert that "the FSIA provides complete immunity to individuals who are officials of a foreign government when they are sued in their official capacity." Defendants' Motion at 15.

Defendants' arguments are persuasive. "Allegations of sexual harassment [against a foreign instrumentality] are necessarily ... 'based upon' the defendants' employment of [plaintiff]." *Zveiter v. Brazilian Nat'l Superintendency of Merchant Marine,* 833 F.Supp. 1089, 1094 (S.D.N.Y. 1993). And, in *Mukaddam,* a case similar to the one at bar, the court noted that "[t]he legislative history of the FSIA indicates that Congress considered the employment of 'diplomatic, civil service, or military personnel' to be 'governmental and not commercial in nature.'" *Mukaddam,* 111 F.Supp.2d at 463. "If plaintiff [is] either a civil servant or a diplomatic officer, her employment [is] not commercial in nature and the FSIA's commercial acts exception to sovereign immunity would not bring plaintiff's lawsuit ... within the jurisdiction of this Court." *Id.*; *see also Elliott v. British Tourist Auth.,* 986 F.Supp. 189, 193 (S.D.N.Y.1997).

Defendants assert, and Plaintiff does not dispute, that "Kato is a Japanese civil servant." Defendants' Motion at 2. "Since becoming a TMG employee in April 1988 and at all times since, including the time she was temporarily stationed in New York, Kato's employment with the TMG has been fully governed by [Japan's] Local Public Servant Law." *Id.* at 9. Kato was "legally required to sit for and pass a competitive examination administered by the TMG's Personnel Commission," *id.* at 4, and is (i) "classified as a local public servant," (ii) "guaranteed lifetime employment with the TMG," (iii) "subject to the same compensation and benefits as all other public servants in her defined category," and (iv) "transferred based on an established rotation system." *Id.* at 9.[4]

Ishihara, as Governor of Tokyo, is also immune under the FSIA.[5] *See Bryks v. Canadian Broad. Corp.,* 906 F.Supp. 204, 210 (S.D.N.Y.1995) ("[I]mmunity under the FSIA extends also to agents of a foreign state acting in their official capacities."). "'It is generally recognized that a suit against an individual acting in his official capacity is the practical equivalent of a suit against the sovereign directly.'" *Id.* (quoting *Chuidian v. Philippine Nat'l Bank,* 912 F.2d 1095, 1101 (9th Cir.1990)).

## B. Title VII, NYSHRL, and NYCHRL Claim(s)

Assuming *arguendo* that the Court did have subject matter jurisdiction, Plaintiff's sexual harassment and retaliation claims

---

4. *See Mukaddam,* 111 F.Supp.2d at 463 ("In deciding whether an individual's employment by a foreign state constitutes civil service, courts have considered whether the employee competed for an examination prior to being hired, was entitled to tenure, was provided the same benefits as foreign service officers, or received civil service protection from the hiring government.")

5. Whether Ishihara is being sued in his official or individual capacity, dismissal is warranted. *See* 28 U.S.C. § 1603 (defining foreign state and its agencies and instrumentalities under the FSIA); *Chuidian,* 912 F.2d at 1101 ("Nowhere in the text or legislative history does Congress state that individuals are *not* encompassed within 28 U.S.C § 1603(b)."); *see also* discussion of Ishihara *supra.*

under Title VII would be dismissed. Plaintiff alleges that "beginning almost immediately after [her] arrival [on May 11, 1998]" to work in TMG's New York Office, her supervisor, Kenzo Toriumi ("Toriumi"), "made aggressive, offensive, and continued sexual advances towards [her]." Complaint ¶ 13. Toriumi also "coerced sexual intercourse from [her] as a condition of [her] employment at TMG." *Id.* ¶ 14. Plaintiff later "refuse[d] any further sexual intercourse with [Toriumi]" and, in December 1999, filed an internal complaint ("Internal Complaint") pursuant to TMG policy. *Id.* ¶¶ 15, 17. On March 23, 2000, "Kato's rotation [in New York] ended ... and Kato was transferred back to Japan to work at the Tokyo Metropolitan University." On July 1, 2000, the TMG's New York Office (permanently) closed. Nakai Aff. ¶¶ 3, 6. Plaintiff filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC"), but did not do so until February 12, 2001.

**Time Bar**

■ Defendants (correctly) contend that "[a]ll of [Plaintiff's] allegations relating to acts that took place while she was employed in New York are time-barred [under Title VII] because they occurred more than 300 days prior to the date of her filing with the EEOC" on February 12, 2001. Defendants' Motion at 6; *see Commodari v. Long Island Univ.*, 89 F.Supp.2d 353, 369 (E.D.N.Y.2000) ("An aggrieved employee has 300 days from the time when he or she knew or should have known of an adverse employment [action] to file a charge of discrimination with the EEOC.") (citing 42 U.S.C. § 2000e–5(e)(1) (1994); *Harris*, 186 F.3d at 247 n. 2). Because Plaintiff filed her EEOC charge on February 12, 2001, acts or events that occurred before April 18, 2000—i.e. Toriumi's alleged sexual harassment of Plaintiff—are time-barred.[6, 7]

**Retaliation Claims**

■ Plaintiff claims that when she refused to have sexual intercourse with Toriumi, he "retaliated against her." Complaint ¶ 16. Plaintiff's Complaint is deficient in this regard because she does not provide any indication of how or when the alleged retaliation occurred. *See Moscowitz v. Brown*, 850 F.Supp. 1185, 1190 (S.D.N.Y.1994) ("Despite the liberality of [the motion to dismiss] standard, only the 'well-pleaded' factual allegations will be taken as true. Baldly conclusory statements that fail to give notice of the basic events of which the plaintiff complains need not be credited by the court.") (citations omitted).

Plaintiff also alleges that, on April 19, 2000, after she had returned to Tokyo, Defendants retaliated against her by "fail[ing] to promote her as would other-

---

**6.** The EEOC issued a Right to Sue letter on April 30, 2001, noting that "[TMG] employs less than the required number of employees or is not otherwise covered by the statutes" and that Plaintiff's charge "was not filed within the time limit required by law." EEOC Dismissal and Notice of Rights, Ex. I to Declaration of Andrew J. Bernstein, dated March 26, 2002. ("Bernstein Decl.").

**7.** The NYSHRL and NYCHRL are governed by a three-year statute of limitations. *See* N.Y. CPLR § 214(2); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir.1998);

*Farage v. Johnson–McClean Technologies*, No. 01 Civ. 4856, 2002 WL 1067824, at *5 (S.D.N.Y. May 29, 2002) ("Under the NYCHRL and the NYSHRL, a plaintiff suing for discrimination must file a lawsuit within three years after the alleged unlawful practice"). Because Plaintiff filed the Complaint on July 21, 2001, acts or events occurring before July 21, 1998 are time-barred. Plaintiff's allegations of sexual harassment, to the extent they may have occurred after July 21, 1998, would be timely under the NYSHRL and NYCHRL.

wise have been the case." Complaint ¶¶ 18–19. The Complaint is deficient because Plaintiff fails to give Defendants "fair notice of what [her] claim is and the grounds upon which it rests." *Swierkiewicz*, 122 S.Ct. at 998. Among other things, nowhere in the Complaint does Plaintiff specify the position to which she expected to be promoted.[8] *See Johnson v. City Univ. of N.Y.*, No. 00 Civ. 4964, 2002 WL 1750841, at *4 (S.D.N.Y. July 24, 2002) (plaintiff failed to provide Defendant "fair notice of ... the grounds upon which [his claim] rests" when he did not "indicate for which available position [Defendant] failed to hire him").[9]

### Claims Against Ishihara

■ Apart from Ishihara's immunity under the FSIA for acts he committed in his official capacity, "[i]t is well settled that an individual may not be held liable under Title VII." *Johnson v. New York Presbyte-*

*rian Hosp.*, No. 00 Civ. 6776, 2001 WL 829868, at *3 (S.D.N.Y. July 20, 2001). And, under both the NYSHRL and NYCHRL, no cause of action lies against Ishihara in his individual capacity because Plaintiff has failed to allege in the Complaint that Ishihara engaged in any wrongful acts.[10],[11] *See Jong–Fwu v. Overseas Shipholding Group*, No. 00 Civ. 9682, 2002 WL 1929490, at *7 (S.D.N.Y. Aug.21, 2002) (while an individual can be sued "under both [the NYSHRL and the NYCHRL], the plaintiff must show that the [individual] defendant engaged in 'discriminatory acts.' ").

### C. Forum Non Conveniens

■ Even if this Court had jurisdiction to address Plaintiff's claims, the Complaint would likely be dismissed on the grounds of forum non conveniens.[12] Here, among

8. According to Defendants, "Kato requested and was granted a medical leave [from TMG] on February 9, 2001.... Kato informed the TMG that she intends to resume her work with the TMG at the conclusion of her medical leave. Kato remains employed with the TMG and her status as a local public servant has not changed." Nakai Aff. ¶¶ 7–8.

9. *See Smith v. Xerox Corp.*, 196 F.3d 358, 363 n. 1 (2d Cir.1999) ("claims under the NYSHRL are analyzed identically to claims under ... Title VII, [and consequently] the outcome of an employment discrimination claim made pursuant to the NYSHRL is the same as it is under ... Title VII") (citations omitted); *Farage*, 2002 WL 1067824, at *6 ("The standards for analyzing discrimination claims brought under the NYSHRL and the NYCHRL ... are the same as for those brought under Title VII.").

10. Plaintiff's claim in her Opposition papers that Ishihara "played a direct role in the decision to retaliate against me, and had to give final approval of how my internal complaint was treated," Kato Decl. ¶ 17, should not be considered here. *See Friedl v. City of New York*, 210 F.3d 79, 83(2d Cir.2000) (in ruling on a 12(b)(6) motion to dismiss, "a district court errs when it 'consider[s] affida-

vits and exhibits submitted by' defendants, or relies on factual allegations contained in legal briefs or memoranda.") (citations omitted).

11. Additionally, Defendants assert that the claims against Ishihara in his individual capacity must be dismissed for lack of personal jurisdiction, since "it would offend 'traditional conception[s]' of fair play and substantial justice' to assert jurisdiction over Ishihara, when he is not alleged to have any contacts with [New York]," Defendants' Motion at 14 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)), and any suit against Ishihara "based on his supervisory status," is "insufficient to establish a basis of long-arm jurisdiction under New York law." *See Nwanze v. Philip Morris, Inc.* 100 F.Supp.2d 215, 220 (S.D.N.Y. 2000) ("mere supervision is insufficient to establish a basis for the exercise of personal jurisdiction.").

12. Dismissal under the doctrine of forum non conveniens involves a balancing test in which the court considers the availability of an alternative forum, and balances the relevant "private interest" and "public interest" factors. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–509, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).

other factors that favor a suit in Tokyo, are the following: (i) a case "concerning the same general matters that are at issue in [this case]," has already been filed **by the Plaintiff** against TMG and is currently pending in the Tokyo District Court ["Tokyo Suit"], Kato Decl. ¶ 15, (ii) "TMG has not challenged the jurisdiction of the Tokyo District Court," Defendants' Motion at 10, (iii) the parties have appeared in the Tokyo District Court on at least three occasions, Nakai Aff. ¶ 11, (iv) "Defendant [TMG] is a [Tokyo] municipality with no offices in New York," Defendants' Motion at 11, (v) Ishihara is the Governor of Tokyo, Complaint ¶ 8, and (vi) Plaintiff is a Japanese citizen.[13]  *Id.*

## IV.  Conclusion and Order

For the foregoing reasons, the Court grants Defendants' Motion to dismiss the Complaint.  The Clerk of the Court is respectfully directed to close this case.

---

**13.**  While Plaintiff claims she resides in New York, Plaintiff's Opposition at 16, Defendants allege that, on February 9, 2001, Plaintiff was granted medical leave and that she left Japan (temporarily) on October 14, 2001.  Reply Affidavit of Keizou Nakai dated June 27, 2002, at ¶ 7.  Defendants claim that Kato is only in New York "on a temporary basis" as "she remains employed by TMG" and that she has "informed the TMG that she intends to resume her work with TMG at the conclusion of her medical leave."  *Id.*