**HERCAIRE INTERNATIONAL, INC., Plaintiff,**

v.

**ARGENTINA, Defendant.**

**No. 83–6432–CIV.**

United States District Court, S.D. Florida, Miami Division.

May 7, 1986.

Gregory G. Olsen, Dingwall, Morgen, and Olsen, Ft. Lauderdale, Fla., for plaintiff.

Dwight Sullivan, Miami, Fla., for defendant.

## ORDER DENYING RELEASE OF SUBSTITUTE SECURITY

EDWARD B. DAVIS, District Judge.

THIS MATTER came on for consideration on Defendant's emergency Motion for Release of Substitute Security. The Clerk of the Court is presently holding a cash bond in the amount of FIVE HUNDRED NINETY THOUSAND DOLLARS ($590,-000.00) as security for an aircraft belonging to Aerolinas Argentinas, a corporation wholly-owned by Defendant ARGENTINA. Plaintiff seized the aircraft on Saturday, May 3, 1985. By telephonic order of the Court on Saturday afternoon the aircraft, a passenger plane, was released into the custody of Aerolinas Argentinas in exchange for the cash bond given to the Clerk of the Court. On Monday, May 5, the Court held a hearing to determine if the levy was authorized by the Court's Order.[1]

### I. Background Facts

In 1983, HERCAIRE sued the nation of ARGENTINA for breach of contract resulting from a commercial transaction between the parties. ARGENTINA answered and counterclaimed against HERCAIRE, waiving sovereign immunity of itself and its agencies. In February 1986 the Court held a jury trial. The Court directed a verdict for the Plaintiff in the amount of TWO HUNDRED ONE THOUSAND, THREE HUNDRED FIFTY–NINE DOLLARS AND 7/100 CENTS ($201,359.07). The jury subsequently returned a verdict denying ARGENTINA any relief on its counterclaim. On February 26, 1986 the Court entered Final Judgment for the Plaintiff in the total amount of TWO HUNDRED EIGHTY–EIGHT THOUSAND, SEVEN HUNDRED FORTY–NINE DOLLARS AND 91/100 CENTS ($288,749.91).[2]

Defendant appealed. It did not pay Plaintiff on the judgment; it did not request a stay of execution pending the appeal; it did not post a supersedeas bond. On April 8, 1986 the Plaintiff filed a Motion for Order Permitting Execution, in order to be paid on its judgment. On April 25, the Court entered the Order. The Order states in pertinent part:

> The property in the United States of AR-GENTINA, used for a commercial activity in the United States, and any property

---

1. Although technically the hearing held on this motion was restricted to the issue of whether the levy was authorized by this Court's Order of April 25, the Court considers Defendant's motion as one for reconsideration of its Order Permitting Execution.

2. On April 3, 1986 the Court entered an Amended Final Judgment for the Plaintiff for the same amount of money, *nunc pro tunc* February 26, 1986.

in the United States of an agency or instrumentality of ARGENTINA engaged in commercial activity in the United States, is not immune from execution upon the Judgment (as amended) entered in this cause, and execution, with regard to such property, shall issue forthwith.

On Thursday, May 1, the Clerk of the Court issued a Writ of Execution pursuant to the Order. On May 3, pursuant to the Writ, the United States Marshal's Service levied upon an Aerolinas Argentinas Boeing 727 commercial airliner at Miami International Airport. That levy produced the rapid succession of subsequent events detailed above.

## II. Discussion

The issue before the Court is whether the Plaintiff may levy against the property of Aerolinas Argentinas, a corporation wholly owned by ARGENTINA, to satisfy its judgment against ARGENTINA. The issue is governed (though not clarified)[3] by the Foreign Sovereign Immunities Act ("FSIA") of 1976, the exclusive source of subject matter jurisdiction over all suits involving foreign states or their instrumentalities. *Rex v. CIA Pervana de Vapores, S.A.*, 660 F.2d 61, 62 (3d Cir.1981), *cert. denied* 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 441 (1982). Defendant and Aerolinas Argentinas admit that the seizure was authorized by this Court's Order of April 25, 1986; however, they claim that the Order is erroneous as a matter of law for several reasons. The Court addresses each of these in turn.

### A. Sovereign Immunity of Aerolinas Argentinas

Aerolinas Argentinas claims that it has not waived its sovereign immunity in this

case, and that therefore the Plaintiff cannot levy upon its property in aid of execution. The Foreign Sovereign Immunities Act assumes that all foreign states and their agencies and instrumentalities are, as a general rule, immune from suit and attachment or execution within the United States. The Act then explicates the limited circumstances in which a foreign state or its agencies and municipalities is not immune from the jurisdiction of our courts. The first of these, and the most obvious, is where "the foreign state has waived its immunity from attachment in aid of execution or from execution either explicitly *or by implication*, notwithstanding any withdrawal of the waiver the foreign state may purport to effect except in accordance with the terms of the waiver." 28 U.S.C. Section 1610(a)(1) (emphasis added).[4]

In its Answer to the Complaint, ARGENTINA explicitly waived its sovereign immunity *and that of its agencies*. Both Defendant and Aerolinas Argentinas now claim that this waiver related only to the jurisdiction of this Court to hear the case, and that neither entity purported to waive its immunity from execution. They claim that it is possible, under the Foreign Sovereign Immunities Act, for a foreign state to waive its sovereign immunity as to jurisdiction, while retaining its immunity against execution on any judgment awarded in its favor. Defendant and Aerolinas Argentinas cite *De Letelier v. Republic of Chile*, 748 F.2d 790 (2d Cir.1984) (Congress granted a right without a remedy in allowing only commercial creditors to execute on their judgments).

■■■ This Court holds that both Defendant ARGENTINA and Aerolinas Argentinas have implicitly waived their immunity against execution under Section

---

**3.** The Foreign Sovereign Immunities Act has been called a "remarkably obtuse" document, a "statutory labyrinth that, owing to the numerous interpretive questions engendered by its bizarre structure and its many deliberately vague provisions, has during its brief lifetime been a financial boon for the private bar but a constant bane of the federal judiciary." *Gibbons v. Udarus na Gaeltachta*, 549 F.Supp. 1094, 1105, 1106 (S.D.N.Y.1982), *quoted in Vencedora Oceanica*

*Navigación v. Compagnie Nationale Algerienne de Navigation*, 730 F.2d 195, 205 (5th Cir.1984) (Higginbotham, J., dissenting). This Court agrees with that characterization.

**4.** Section 1610(b)(1) contains the same language with respect to agencies and instrumentalities of foreign states.

1610(a)(1) and 1610(b)(1).[5] When a foreign state or agency willingly consents to suit in the courts of the United States, files a counterclaim against the Plaintiff, and subjects that court to a full-scale trial on the merits, it cannot, when it discovers it has lost the suit, invoke its sovereign immunity with respect to execution. This would be akin to asking for a refund because the Defendant didn't like the play. In order to waive its sovereign immunity to jurisdiction while retaining immunity as to execution, a foreign state and its agencies must expressly retain that immunity, either in its Answer or in some other form. Otherwise, the Court will deem that immunity implicitly waived. To rule any other way would be to subject the Court, the parties, and counsel to needless expense and effort in litigating a cause that may eventually prove useless. Though the statute does allow for this situation, a Plaintiff should at least be given fair warning at the inception of the action that, although the country in question is technically waiving its sovereign immunity, it does so only if it eventually wins. A Plaintiff could then either withdraw its suit or take it chances on the foreign state's benevolence. It would do so knowingly, however, and with full appreciation of the possible consequences of pursuing the case to its conclusion. In this case, the Defendant waived immunity both for itself and for its agencies.[6] The Plaintiff had a right to assume that this was also an implied waiver of sovereign immunity as to execution, should judgment be rendered against it. Certainly the Defendant did not state otherwise. The Court therefore holds that both the Defendant ARGENTINA and Aerolinas Argentinas waived their sovereign immunity as to execution on the judgment.[7]

## B. Separate Juridical Existence of Aerolinas Argentinas

Aerolinas Argentinas also claims that it is a separate and distinct entity apart from ARGENTINA, and, since it had not waived its immunity, Plaintiff had no authority to seize its assets in execution of a judgment against Defendant, even though ARGENTINA owns 100% of its assets. The parties cite one Second Circuit case, *De Letelier v. Republic of Chile, supra*, to support their proposition.[8] The case is factually similar to this one, except for some crucial details. In *De Letelier*, Plaintiff instituted a tort action against certain individuals and the Republic of Chile. Chile did not respond at all to the Complaint except to send two diplomatic notes to the State Department asserting its sovereign immunity. The District Court eventually entered a default judgment against Chile, and awarded Plaintiffs over five million dollars in compensatory and punitive damages, interest, counsel fees, and out-of-pocket expenses. Chile did not appeal. The District Court then ordered execution on the judgment against the assets of LanChile, the Chilean national airline. The Second Circuit reversed, holding that LanChile was entitled to separate recognition.

The Court in *De Letelier* distinguished *First National City Bank v. Banco Para El Comercio Exterior de Cuba (Bancec)*,

---

5. Compare these sections to Section 1610(d)(1), requiring *explicit* waiver of attachment prior to judgment. As to that provision, see *Libra Bank Limited v. Banco Nacional de Costa Rica*, 676 F.2d 47, 50 and n. 4 (2d Cir.1982). The Court there noted that the difference between explicit and implied waiver is that implied waiver may be accomplished unintentionally.

6. Defendant could have waived sovereign immunity against execution only as to itself, while retaining it for its agencies. It did not do so. Furthermore, Aerolinas Argentinas has not challenged the Defendant's authority to waive the sovereign immunity of its agencies and instrumentalities.

7. Because of the Court's ruling on the waiver issue, it becomes unnecessary to discuss Aerolinas Argentinas's argument that it was not involved in the commercial activity on which Plaintiff's claim was based for purposes of Section 1610(a)(2). Sections 1610(a)(1) and (2) are independent bases for denying sovereign immunity.

8. The Court reminds the parties that it is not bound by Second Circuit law, although it may find it persuasive.

462 U.S. 611, 103 S.Ct. 2591, 77 L.Ed.2d 46 (1983). There the Supreme Court held that, since the bank was really the alter ego of the government, it was not entitled to separate juridical status (reversing the Second Circuit). In *De Letelier*, the Court held that, unlike the case in *Bancec*, the presumption of separateness had not been overcome.

■ Even if Aerolinas Argentinas had not already waived its sovereign immunity, the Court holds that where, as here, the sovereign owns 100% of the assets of the agency at issue, the presumption that Aerolinas Argentinas is an entity separate from ARGENTINA is overcome. This is especially true where ARGENTINA has waived the sovereign immunity of all its agencies. Such an act emphasizes that it has power and control over its agencies, and that they are really its alter ego.

Agencies and instrumentalities of foreign states have been recognized under the FSIA as part of the foreign state. *See Arango v. Guzman Travel Advisors Corporation*, 621 F.2d 1371, 1378 (5th Cir. 1980) (holding that an airline wholly owned by the Dominican government is a "foreign state" as defined in Section 1603(a)). Many courts have shielded foreign agencies under the cloak of sovereign immunity by including them within the definition of a foreign state. *See, e.g., Alberti v. Empresa Nicaraguense De La Carne*, 705 F.2d 250 (7th Cir.1983); *Carey v. National Oil Corporation*, 592 F.2d 673 (2d Cir.1979). It would be unfair to allow agencies to remove their statutory cloak when they find it convenient, and then to replace it when the weather once again turns foul. Statutory garb is permanent. This Court considers an agency or instrumentality of a foreign state as the foreign state itself for *all* purposes under the FSIA.

The FSIA itself supports this reading. Section 1610(a)(1) allows a "foreign state" to waive its immunity either explicitly or by implication. Section 1603(a) defines a for-

eign state to include "a political subdivision of a foreign state or an agency or instrumentality of a foreign state." Subsection (b) includes within the definition of an "agency or instrumentality" a corporation that is an organ of a foreign state or a majority of whose shares is owned by the foreign state. 28 U.S.C. Section 1603(b)(1) and (2). In this case, Defendant ARGENTINA owns *all* of the shares of Aerolinas Argentinas. Therefore, its assets are those of ARGENTINA.[9]

### C. Convention on the International Recognition of Rights in Aircraft

■ Finally, Aerolinas Argentinas argues that seizure of a foreign aircraft is regulated by the Convention on the International Recognition of Rights in Aircraft, 4 U.S.T. 1830. Aerolinas Argentinas argues that seizure of aircraft is unlawful without following the various procedures outlined in Article VII of the Convention. Article VII, however, does not concern the levy of aircraft in aid of execution, but their sale. Therefore, the Convention does not apply. Therefore, it is:

ORDERED AND ADJUDGED that Defendant and Aerolinas Argentinas's motion is hereby DENIED. Plaintiff is entitled to enforce the Writ of Execution to the extent of TWO HUNDRED NINETY-THREE THOUSAND SEVEN HUNDRED SIXTY-ONE DOLLARS AND 27/100 CENTS ($293,761.27). This Order shall become effective at twelve o'clock noon on Friday, May 9, 1986.

---

**9.** This basis for denying Aerolinas Argentinas's motion is independent from that above, which holds that both Defendant and Aerolinas Argentinas have waived their sovereign immunity from execution.