Leonidas ORTEGA TRUJILLO, Jaime Ortega Trujillo, and Luis Alberto Ortega Trujillo, Plaintiffs,

v.

BANCO CENTRAL DEL ECUADOR, an agency of the Government of Ecuador, Augusto de la Torre, and Conover & Company Communications, Inc., a Massachusetts Corporation, Defendants.

BANCO CENTRAL DEL ECUADOR, Counter–Plaintiff and Third–Party Plaintiff,

and

Banco Continental, S.A., and Banco Continental Overseas, N.V., Third–Party Plaintiffs,

v.

Leonidas ORTEGA TRUJILLO, Jaime Ortega Trujillo, and Luis Alberto Ortega Trujillo, Counter–Defendants and Third–Party Defendants,

and

PanAmerican Bank a Florida Bank, Interbank Holding Corp., a Florida Corporation, Fabian Ortega Trujillo, Jorge Ortega Trujillo, Gustavo Ortega Trujillo, Maria del Carmen Ortega de Velez, Angel Torres Noboa, Martin Costa March, Carlos Baquerizo Blum, Glen Goldhagen, Ansbacher (Bahamas) Ltd., a Bahamian company, and Nestor Cubillos, Third–Party Defendants.

No. 98–0373 CIV.

United States District Court, S.D. Florida.

Aug. 14, 1998.

---

Mark Schnapp, Marlene Silverman, Anna Oestereicher, Miami, FL, for Plaintiffs.

Stephen Hartz, Jill Cook, George Volsky, Laura Besvinick, Peter Yanowitch, Luca Bronzi, Miami, FL, Kara Cunningham, David Geneson, Washington, DC, for Defendants.

*ORDER GRANTING IN PART AND DENYING IN PART BANCO CENTRAL'S MOTION TO DISMISS, GRANTING DE LA TORRE'S MOTION TO DISMISS, AND DENYING JOINT MOTION TO STRIKE*

JAMES LAWRENCE KING, District Judge.

THIS CAUSE comes before the Court on three motions, each filed May 19, 1998:(1) Defendant Banco Central del Ecuador's ("Banco Central") Motion To Dismiss Counts I and III of the Complaint; (2) Defendant Augusto de la Torre's ("de la Torre") Motion To Dismiss; and (3) Defendant Banco Central and de la Torre's Joint Motion To Strike Plaintiff's Jury Demand and Punitive Damages Claims. Plaintiffs invoke this Court's jurisdiction under 28 U.S.C. § 1330(a), pendant party jurisdiction, 28 U.S.C. § 1367, Rule 4 of the Federal Rules of Civil Procedure, and claim venue in this judicial district pursuant to 28 U.S.C. § 1391(f)(1). Banco Central brings its Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. De la Torre brings his Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Banco Central and de la Torre jointly move to strike pursuant to rules 12(b)(6) and 12(f), 28 U.S.C. § 1330(a), 28 U.S.C. § 1602 *et seq.*, and section 768.72 of the Florida Statutes. Plaintiffs filed their response on August 10, 1998.

### Summary of Facts

For purposes of the Motions to Dismiss, the Court must construe the facts in the light most favorable to the Plaintiffs, accepting all facts alleged on the face of their pleadings as true. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). The facts as alleged by Plaintiffs in their Complaint, filed February 20, 1998, and Amended Complaint, filed June 9, 1998, are as follows:

Each individual Plaintiff is a citizen of the Republic of Ecuador ("Ecuador"). (*See*

Compl. ¶¶ 4–7.) Plaintiff Luis Ortega Trujillo ("Luis Ortega") is a resident of the Southern District of Florida. (See id. ¶ 2.) Plaintiffs are "brothers in a prominent Ecuadorian family," who, with other family members, own all stock in Interbank Holding Company ("Interbank"), "a bank holding company incorporated under the laws of Florida." (See Id. ¶¶ 13–14.) Via Interbank, Plaintiffs and their family control PanAmerican Bank ("PanAmerican"), a Miami-based, FDIC-insured member bank of the Federal Reserve Bank of Atlanta. (See Am. Compl. ¶ 14.) Luis Ortega is a member of PanAmerican's board of directors, and Plaintiffs have business interests in South Florida. (See Compl. ¶¶ 13–14.) Plaintiffs, along with family members, indirectly own a majority interest in Conticorp S.A. ("Conticorp"), an Ecuadorian holding company. At the time of the matters at issue, Conticorp indirectly owned all stock of Banco Continental S.A. ("Continental"), an Ecuadorian commercial bank.

Defendant Banco Central is the central bank of Ecuador. Being an agency of the Ecuadorian government, Banco Central is defined by U.S. law as an agency or instrumentality of a foreign state, See 28 U.S.C. § 1603(b). Defendant de la Torre is a citizen of Ecuador residing in ' New York. (See Compl. ¶ 8.) At the times of the events at issue, de la Torre was an employee of Banco Central, acting within its authority. (See id.) Defendant Conover, a public relations firm (see Am. Compl. ¶ 1), is a Massachusetts corporation with its principal place of business in Washington, D.C. (see Compl. ¶ 9). Conover assists its clients in the drafting and dissemination of press releases and other, similar publications. (See Id. ¶¶ 24–25.) Conover is registered with the U.S. Department of Justice as an agent of Banco Central (see Id. ¶ 26), pursuant to the Foreign Agents Registration Act, 22 U.S.C. § 611 (1994).

Plaintiffs allege that Conover, as the agent of Banco Central and under the direction of de la Torre, disseminated a defamatory press release (the "Press Release") to government and news agencies in the United States, including major media outlets in the Southern District of Florida. (See Id. ¶¶ 34, 42.) Plaintiffs have brought suit against Banco Central, de la Torre, and Conover, charging all Defendants with defamation and false light invasion of privacy (Counts I, II) and charging Banco Central and de la Torre with intentional infliction of emotional distress (Count III). (See Id. ¶¶ 1, 44–64.) Banco Central moves for dismissal of Counts I and III. De la Torre moves for dismissal on all counts. Banco Central and de la Torre move jointly to strike Plaintiffs' jury demand and claim for punitive damages.

### Legal Standard

Dismissal is justified only when " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " See Hartford Fire Ins. Co. v. California, 509 U.S. 764, 810, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993) (quoting McLain v. Real Estate Bd. of New Orleans, Inc., 444 U.S. 232, 246, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980)). As above, the complaint is construed in the light most favorable to the plaintiff, and all facts alleged by the plaintiff are accepted as true. See Hishon, 467 U.S. at 73, 104 S.Ct. 2229. Regardless of the alleged facts, however, a court may dismiss a complaint on a dispositive issue of law. See Marshall County Bd. of Educ. v. Marshall County Gas Dist., 992 F.2d 1171, 1174 (11th Cir.1993).

### Discussion: Banco Central's Motion to Dismiss

Banco Central moves for dismissal of Counts I and III. As to Count I, for defamation, Banco Central argues that Plaintiffs are public figures who are required to claim "actual malice" on the part of a defendant when claiming defamation, that they have failed to do so, and as such have failed. to allege the requisite intent to sustain a claim for defamation. (See Banco Central's Mot. at 7–11.) As to Count III, Banco Central argues that Plaintiffs have failed to properly state a claim. (See Banco Central's Mot. at 12–16.)

The Court has already addressed the issue of Count I in its Order Granting In Part And Denying In Part Defendant Conover's Motion To Dismiss Or For Summary Judgment And Denying Motion To Strike ("Conover Order"), entered July 29, 1998. While Conover's Motion raised several questions which are irrelevant to this discussion (namely, issues of media immunity and neutral reporting privilege), the reasoning the Court applied in that instance is generally applicable here. Therefore, for the same reasons previously enumerated in the Conover Order, the Court will deny Banco Central's Motion To Dismiss as to Count I.

■ Banco Central correctly argues that Plaintiffs have failed to properly state a claim for intentional infliction of emotional distress under Count III. (*See* Banco Central's Mot. at 12–16.) The Court need not address Banco Central's assertion that Plaintiffs fail to meet the test of conduct required to sustain such a claim because the claim itself arises from the Press Release. (*See* Am. Compl. ¶¶ 60–61, 63–64.) Accordingly, it is barred by Florida's independent tort doctrine.

■ In Florida, a single publication gives rise to a single course of action. *See Fridovich v. Fridovich*, 598 So.2d 65, 70 (Fla.1992) (successful invocation of defamation privilege precludes cause of action for intentional infliction of emotional distress if sole basis for latter is same publication); *Byrd v. Hustler Magazine*, 433 So.2d 593, 594–595 (Fla.Dist. Ct.App.1983) (false light claim rejected when

based on same factual allegations as defamation claim), *petition for review denied,* 443 So.2d 979 (Fla.1984).[1] An attempt to state a claim for intentional infliction of emotional distress based on the same publication as the defamation count must fail. *See Clark v. Clark,* 1993 WL 528464, at *4 (Fla.Dist.Ct. App.1993). The claim for intentional infliction of emotional distress must stem from outrageous conduct separate from the defamation and not merely "[re]describe the tort of libel while characterizing it as 'outrageous conduct.'" *Boyles v. Mid–Florida Television Corp.,* 431 so.2d 627, 635 (Fla.Dist.Ct. App.1983). As Plaintiffs' causes of action for intentional infliction of emotional distress and defamation arise from the same publication, Count III against Banco Central must be dismissed.

### De la Torre's Motion to Dismiss

■ Defendant de la Torre makes several arguments in favor of dismissal. The Court, however, need only address the argument that the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq.,* precludes this lawsuit.[2]

■ De la Torre argues that he qualifies for FSIA immunity. (*See* De la Torre's Mot. at 1, 8–10.) Plaintiffs concede the point in their own pleadings, allowing that both Banco Central and de la Torre qualify as agencies or instrumentalities of a foreign sovereign under the FSIA. (*See* Compl. ¶¶ 7–8; Am. Compl. ¶¶ 7–8.)[3] The FSIA is the exclusive source of subject matter jurisdiction

---

1. This single publication/single action rule is designed to discourage the erosion of free speech safeguards by the simple expedient of looking to a substitute cause of action. *See Orlando Sports Stadium, Inc. v. Sentinel Star Co.,* 316 So.2d 607, 609 (Fla.Dist.Ct.App.1975) ("We look for the reality, and the essence of the action, and not its mere name.")

2. Banco Central's Motion to Dismiss does not explicitly move for dismissal under the FSIA. This Court is not precluded, however, from applying the FSIA *sua sponte* in the absence of such argument, unless an applicable international agreement or exceptions within the FSIA itself were to allow such a suit. *See Castillo v. Shipping Corp. of India,* 606 F.Supp. 497, 500

(S.D.N.Y.1985). The Court will refrain from dismissing the case against Banco Central based on the FSIA in light of Banco Central's Counter–Claim, which Banco Central has conceded (at oral argument before the Court on July 28, 1998) effectively waves FSIA immunity from suit in this matter.

3. Both the Complaint and the Amended Complaint read, "At the times of events at issue in this action (but no longer) de la Torre was 'an agency or instrumentality' within the meaning of 28 U.S.C. § 1603(b), in that he acted in his official capacity as an agent or employee of [Banco Central] and in doing so did not exceed the scope of his authority." Compl. ¶ 8; Am. Compl. ¶ 8.

over all suits involving foreign states or their instrumentalities. *See Hercaire Int'l Inc. v. Argentina,* 642 F.Supp. 126, 128 (S.D.Fla. 1986).[4] Under the FSIA, foreign states, their agencies and instrumentalities are immune from the jurisdiction of courts in the United States unless a particular exception of the statute applies. 28 U.S.C. § 1604; *see Carnival Cruise Lines, Inc. v. Oy Wartsila, Ab,* 159 B.R. 984 (S.D.Fla.1993). For example, immunity does not exist where the action is based upon a foreign state's commercial activity (or the commercial activity of that state's agency or instrumentality) within the United States. *See* 28 U.S.C. § 1605(a)(2); *Saudi Arabia v. Nelson,* 507 U.S. 349, 113 S.Ct. 1471, 123 L.Ed.2d 47 (1993). Similarly, under section 1605(a)(5), FSIA immunity generally does not apply when the foreign state (or its agency or instrumentality) is sued for money damages for personal injuries resulting from tortious activity "in which the damage to or loss of property occurs in the United States." *Argentine Republic v. Amerada Hess Shipping Corp.,* 488 U.S. 428, 439–440, 109 S.Ct. 683, 102 L.Ed.2d 818 (1989).

Cases involving defamation claims, however, do not fall under the purview of the tortious activity exception, which specifically does not apply to defamation actions. *See* 28 U.S.C. § 1605(a)(5)(B). This exception to an exception is well founded (albeit indiscriminate); as the Central District of California commented, "it [is] unlikely that Congress wished to create a double standard under which foreign sovereigns could be sued in United States courts on tort claims, such as libel, for which the United States Government itself is immune." *Gregorian v. Izvestia,* 658 F.Supp. 1224, 1233–1234 (C.D.Cal. 1987), *aff'd in relevant part,* 871 F.2d 1515 (9th Cir.1989).[5]

Courts have consistently afforded literal interpretation to the 1605(a)(5)(B) bar on def-

In their Response to de la Torre's Motion, Plaintiffs contradict the representation of fact made in the original Complaint and the Amended Complaint, and argue that de la Torre does not qualify as an agency of instrumentality of a foreign sovereign. (Pl.'s Resp. to de la Torre's Mot. at 5–8.) The crux of Plaintiffs' argument is that the FSIA does not extend to individual employees of foreign sovereigns or their agencies or instrumentalities. The Court rejects this argument. Individuals acting in their official capacities are considered agencies or instrumentalities of a foreign sovereign for purposes of the FSIA. Determination of whether or not an individual acted in official capacity focuses on the nature of the individual's alleged actions, rather than the alleged motives underlying them. *See Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan,* 115 F.3d 1020, 1027 (D.C.Cir.1997); *see also El–Fadl v. Central Bank of Jordan,* 75 F.3d 668, 671 (D.C.Cir.1996); *Chuidian v. Philippine Nat. Bank,* 912 F.2d 1095, 1099–1103 (9th Cir.1990); *Phaneuf v. Republic of Indonesia,* 106 F.3d 302, 306 (9th Cir.1997); *Dominican Energy Limited, Inc. v. Dominican Republic,* 903 F.Supp. 1507 (M.D.Fla.1995).

The rationale for this is self-evident: the protections of the FSIA would be severely impeded if individuals were subject to suit for actions taken in their capacity as the agents of foreign sovereigns.

4. Citing *Gibbons v. Udaras na Gaeltachta,* 549 F.Supp. 1094, 1105, 1106 (S.D.N.Y.1982), the

*Hercaire* court astutely noted that the FSIA "has been called a 'remarkably obtuse' document, a 'statutory labyrinth that, owing to the numerous interpretive questions engendered by its bizarre structure and its many deliberately vague provisions, has during its brief lifetime been a financial boon for the private bar but a constant bane of the federal judiciary.'" It proceeded to comment, "this Court agrees with that characterization." *Hercaire,* 642 F.Supp. at 128 n. 3. This Court, in turn, concurs with the *Hercaire* court's assessment.

5. As noted in *Verlinden B.V. v. Central Bank of Nigeria,* prior to the enactment of the FSIA, foreign sovereigns enjoyed nearly unrestricted immunity from suit in U.S. courts. 461 U.S. 480, 486, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983). Following the release of the Tate Letter in 1952, it fell upon the U.S. State Department to determine whether or not the conduct of a foreign state was sovereign, and so protected by sovereign immunity. *See* GARY B. BORN, INTERNATIONAL CIVIL LITIGATION IN U.S. COURTS 210 (3d ed.1996). After difficulties with this approach prompted calls for Congressional action, and after lengthy consideration of the issue by Congress, the FSIA was enacted in 1976. *See id.* at 211. The practical effect of the FSIA was to restrict, rather than expand, foreign sovereign immunity in U.S. courts, as it enacted a number of set exceptions (enfranchised in section 1605) to the previously stringent doctrine. It is noteworthy that, even as Congress enumerated these exceptions, it specifi-

amation claims against foreign sovereigns and their agents.[6] This Court has reviewed every case on record in which a U.S. Court addressed the 1605(a)(5)(B) restriction on defamation claims against foreign sovereigns.[7] Nowhere in the annals of jurisprudence is there to be found a case in which a federal court allowed a claim for defamation against a foreign sovereign or the agency or instrumentality of a foreign sovereign. It is noteworthy that, even during the height of the Cold War, U.S. courts refused to grant libel claims against Soviet government-run news agencies.[8] As de la Torre qualifies as an agency or instrumentality of Ecuador, all claims against him must be dismissed.

Given the dismissal of the charges against de la Torre, and Banco Central's waiver of sovereign immunity, the Court sees no reason to strike Plaintiffs' demands for jury trial and punitive damages.

### Conclusion

Accordingly, after a careful review of the record and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED that all charges against Defendant de la Torre be, and the same are hereby, DISMISSED, with prejudice. It is further

ORDERED and ADJUDGED that Defendant Banco Central's Motion to Dismiss be, and the same is hereby, DENIED as to Count I (Defamation), and GRANTED with prejudice as to Count III (Intentional Infliction of Emotional Distress). It is further

ORDERED and ADJUDGED that Banco Central and de la Torre's Joint Motion To Strike Plaintiff's Jury Demand and Punitive Damages Claims be, and the same is hereby, DENIED.

---

cally maintained the bar on defamation claims against foreign governments and their agents.

6. This appears to be a case of first impression for a District Court in the Eleventh Circuit. (While there is one 1605(a)(5)(B) case on record in this district, it deals with commercial misrepresentation, not defamation. *See Carnival Cruise Lines,* 159 B.R. at 984.) The vast preponderance of 1605(a)(5)(B) cases dealing with the issue of defamation arise out of the Southern District of New York, the Ninth Circuit, and the D.C. Circuit. Accordingly, this Court looks primarily to those jurisdictions for guidance in this regard.

7. In one instance, Russia was held exempt from liability despite the accusation that, under Soviet rule, it had engaged in a campaign to deliberately mislead the American public as to the deaths of Polish prisoners during World War II. *See Kozorowski v. Russian Federation,* 124 F.3d 211 (9th Cir.1997) (holding that foreign sovereigns are immune from suit on claims of torts specifically enumerated by 1605(a)(5)(B),even if plaintiffs suffer "grave distress"). In another case, an American businessman was prohibited from bringing suit against the Soviet Union, which

had allegedly defamed him and his business in the state newspaper, "Izvestia." *See Gregorian v. Izvestia,* 871 F.2d 1515, 1522 n. 4 (9th Cir.1989) (holding that "the bar against 'libel' claims contained in section 1605(a)(5)(B) must be construed to include claims of 'trade libel' "). In a recent case, 1605(a)(5)(B) prohibited a religious teacher from pursuing a defamation claim against the Canadian Broadcasting Network when it aired a report claiming that he had sexually abused his students. *See Bryks v. Canadian Broad. Corp.,* 906 F.Supp. 204 (S.D.N.Y. 1995). A terminated employee of the World Bank was prohibited from bringing defamation charges against his former employer. *See Morgan v. Int'l Bank for Reconstruction & Dev.,* 752 F.Supp. 492 (D.D.C.1990) ("[T]he [FSIA] tort exception does not pierce immunity for two of the complaint's four counts, those alleging libel and slander."). Finally, a Russian dissident was restricted from bringing defamation claims against Tass, the news service of the Soviet Union. *See Yessenin–Volpin v. Novosti Press Agency,* 443 F.Supp. 849 (S.D.N.Y.1978).

8. *See Gregorian, supra* n. 7; *Yessenin–Volpin, supra* n. 7.